**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jordan S Antahn, | No. CV-23-00078-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On August 12, 2020, Claimant Jordan Antahn applied for Supplemental Security Income pursuant to Title XVI of the Social Security Act ("SSA"). (AR. 236–44.) Antahn alleged an onset date of April 25, 2019.[1] (AR. 236.) Antahn's claims were denied initially and on reconsideration. (AR. 86–104, 106–30.) After an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on January 12, 2022, finding Antahn not disabled. (AR. 14–38.) The Appeals Council denied review of that decision, making the ALJ's determination the final decision of the Commissioner of the Social Security Administration. (AR. 1–5.) Antahn seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons herein, the Court affirms.

**I.   Five-Step Sequential Evaluation**

To determine whether a claimant is disabled under the SSA, the ALJ employs a five-step sequential evaluation. *See* 20 C.F.R. § 416.920(a). The claimant bears the burden of

---

[1] However, for Title XVI claims, benefits are not payable prior to the claimant's filing date. *See* 20 C.F.R. § 416.335.

proof at the first four steps, but burden then shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines whether the claimant is engaged in substantial, gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If she is, the claimant is not disabled, and the inquiry ends. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments—that meets the duration requirement. *Id*. § 416.920(a)(4)(ii). If the claimant does not have such an impairment, she is not disabled and the inquiry ends. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(ii). If so, the claimant is disabled and entitled to benefits under the SSA. *Id.* If not, then the ALJ moves to the fourth step, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of such work, the claimant is not disabled. If she is not capable of performing past work, then the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and entitled to benefits. *Id.*

**II.      Judicial Review**

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court will uphold an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400

F.3d 676, 679 (9th Cir. 2005)). If the "evidence is susceptible to more than one rational interpretation," the Court will affirm the ALJ's decision. *Id.* That said, the Court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

### III. Analysis

Antahn raises four issues for the Court's consideration. She contends that the ALJ erred by: (1) failing to properly address and evaluate the medical opinion of Antahn's examining doctor; (2) rejecting Antahn's symptom testimony without providing clear and convincing reasons; (3) rejecting lay witness testimony without providing specific, germane reasons; and (4) relying on vocational testimony given in response to an incomplete hypothetical question. The Court addresses each argument in turn.

### A. Substantial evidence supports the ALJ's evaluation of Dr. Geary's medical opinion.

Antahn filed her benefits applications after March 27, 2017, so the revised SSA regulations govern how the ALJ evaluates and considers medical opinions. *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022). Under these regulations, the most important factors in evaluating a medical source's opinion is "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Antahn contends that the ALJ improperly rejected the opinion of Dr. Brent Geary, who examined Antahn in October 2021 and opined that Antahn's mental impairments cause moderately-severe to severe mental-functioning limitations and meet the criteria of Listings 12.03, 12.04, 12.06, and 12.15. (Doc. 9 at 11.) In discrediting Dr. Geary's opinion, the ALJ explained that Dr. Geary's opined limitations were not supported by the objective

findings of Dr. Geary's independent psychological evaluation of Antahn or by his own observations of Antahn; that Dr. Geary relied primarily on Antahn's subjective report of symptoms and limitations; and that Dr. Geary's opinion is inconsistent with other medical evidence in the record.

The Court finds that substantial evidence supports the ALJ's evaluation of Dr. Geary's opinion. First, in his own assessment of Antahn, Dr. Geary observed that she appeared adequately groomed and presented with an involved demeanor throughout the examination; Antahn was cooperative, polite in interactions, and receptive to questions; and Antahn had satisfactory eye contact and attention span. Furthermore, although Antahn alleged to hearing voices and seeing shadows, there was no indication during the session that Antahn was attending to internal stimuli or responding to other perceptual abnormalities, such as delusions. Antahn appeared tense but was able to focus on topics and tasks as hand. Dr. Geary observed no difficulties with judgment. Antahn also tested within normal limits for logical memory recognition, verbal paired associates recognition, visual reproduction recognition, and designs recognition. (AR. 939–44.) It was rational for the ALJ to conclude that Dr. Geary's opined limitations regarding Antahn's memory (opined as moderately severe), attention and concentration for extended periods (severe), and ability to interact with others (severe) were inconsistent with Dr. Geary's own observations and testing.

The ALJ also noted that Dr. Geary's opined limitations relied primarily on Antahn's subjective reporting of her symptoms. Antahn contends that this is not a valid reason for discrediting Dr. Geary's opinion—that a doctor's "reports should not be rejected merely because the doctor has recorded the patient's complaints." (Doc. 9 at 11–12.) The Court disagrees. Where a medical opinion relies on a claimant's subjective reporting of symptoms and is not otherwise supported by clinical or other objective medical evidence, the ALJ properly discounts that medical opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, Dr. Geary's opined limitations largely track Antahn's self-reported limits. In contrast, Dr. Geary's testing of Antahn and other objective medical evidence in the

record (e.g., unremarkable mental status examination findings, euthymic mood, full affect, denied hallucinations, logical though process, normal perception) reflect less severe limitations. (*See e.g.*, AR. 692–93, 723–24, 961–62, 971–72.) The Court finds that substantial evidence supports the ALJ's conclusion that Dr. Geary's opinion lacks both support and consistency with other evidence in the record.

### B. The ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Antahn's symptom testimony.

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Id.* at 1014. First, the ALJ must determine whether there is an underlying medically determinable impairment that "could reasonably be expected to produce the . . . symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation omitted). If the claimant meets this first test and absent evidence of malingering, the ALJ then "can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] . . . did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

Here, Antahn claimed that her impairments—which includes PTSD, bipolar depression, severe anxiety, and panic attacks—negatively impact her ability to be around, speak with, and interact with others; sleep; tend to her personal care and grooming needs; lift, squat, stand, reach, walk, kneel; and complete tasks, understand, concentrate, and follow instructions. The ALJ found that such limitations were inconsistent with objective medical evidence, Antahn's treatment history, and her daily activities. (AR. 23–27.) These are specific, clear and convincing reasons for discrediting symptom testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that inconsistencies

between subjective complaints and objective medical evidence is a clear and convincing reason for discounting claimant's testimony); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

Substantial evidence supports the ALJ's findings. For instance, though Antahn claimed difficulty sleeping because of her mental health, medical records repeatedly show Antahn negative for anxiety, depression, and sleep disturbance. (*See e.g.*, AR. 1137, 1248, 1308.) Treatment records also show that Antahn's psychiatric condition and mental health impairments improved with counseling and therapy. (*See e.g.*, AR. 878, 962, 1265.) Moreover, although Antahn claimed disabling symptoms as a result of her mental impairments, Antahn's daily activities include going to cosplay conventions and concerts with friends, doing laundry, playing video games, paying her bills, handling her bank accounts, and other activities that require sustained concentration (such as fixing a computer). (*See e.g.*, AR. 57, 260, 263.)

Antahn claims the ALJ improperly singled out a few periods of temporary well-being to discredit Antahn, but the Court disagrees. Substantial evidence supports that Antahn's mental status examinations were within normal limits and presented as unremarkable. Throughout the record, examinations show that Antahn had a euthymic mood; full affect; clear speech; logical thoughts; normal perception, insight, and judgment; and stable mental health. (*See e.g.*, AR. 692–93, 724, 961–62.) In sum, the ALJ rationally and properly evaluated Antahn's symptoms in accordance with 20 C.F.R. § 416.929(c), and so the Court affirms the ALJ's finding.

**C. The ALJ properly evaluated lay witness testimony.**

Antahn next argues that the ALJ failed to provide germane reasons for discrediting statements made by Antahn's boyfriend regarding her limitations. (Doc. 9 at 19.)

Defendant responds by arguing that under revised SSA regulations, an ALJ is not required to specifically address lay witness evidence. (Doc. 13 at 13.) For claims filed on or after March 17, 2017, revised SSA regulations provide that an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources . . . ." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Based on this provision, Defendant asserts that that ALJs are no longer required to articulate in their decision how they considered lay witness evidence.

The Court need not reach the issue of whether, under the revised regulations, an ALJ must articulate his evaluation of lay witness opinion because any error committed is harmless.[2] "Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020).

Here, Antahn's boyfriend claimed that Antahn has difficulty sleeping; struggles with personal hygiene and grooming; suffers from debilitating anxiety and panic attacks; and has difficulty lifting, squatting, walking, sitting, talking, completing tasks, following instructions, understanding, and getting along with others. (AR. 309–16.) These symptoms and limitations are similar to those that Antahn testified to. Thus, because the ALJ gave clear and convincing reasons to reject Antahn's testimony, the ALJ properly rejected her boyfriend's testimony as well. The Court finds no harmful error in the ALJ's evaluation of lay witness opinion.

**D.  The ALJ's step-five determination is supported by substantial evidence.**

---

[2] "The Ninth Circuit has not yet addressed whether the revised regulations change the requirement for germane reasons to discount lay witness testimony." *Sharon W. v. Kijakazi*, No. 1:22-cv-00013-DKG, 2023 WL 246391, at *7 (D. Idaho Jan. 18, 2023) (surveying cases). District courts within this circuit appear split on the issue. *Compare e.g.*, *Wendy J. C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *12 n.9 (D. Or. Oct. 21, 2020) (noting that for claims filed on or after March 27, 2027, the ALJ is not required to provide germane reasons for rejecting lay witnesses' testimony) *with Joseph M.R. v. Comm'r of Soc. Sec. Admin.*, 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (finding that new SSA regulations did "not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements").

At step five, the ALJ considers a claimant's RFC, age, education, and work experience to determine whether a claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If a claimant can make the adjustment to other work, the claimant is not disabled. *Id*. To make this determination, the ALJ may rely a vocational expert ("VE") to testify as to: "(1) what jobs the claimant, given [his RFC], would be able to do; and (2) the availability of such jobs in the national economy. At the hearing, the ALJ poses hypothetical questions to the [VE] that 'set out all of the claimant's impairments' for the [VE's] consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Antahn argues that in posing her hypothetical questions to the VE, the ALJ omitted Antahn's allegations, the limitations noted by Antahn's boyfriends, and the limitations assessed by Dr. Geary; as a result, the ALJ's step-five determination is unsupported by substantial evidence. (Doc. 9 at 21.) The Court disagrees.

Where the hypothetical the ALJ poses to the VE contains all of the limitations the ALJ finds credible and supported by substantial evidence in the record, the "ALJ's reliance on testimony the VE gave in response to the hypothetical . . . [is] proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (holding that ALJ did not err in omitting limitations not supported by substantial evidence in the record from the hypothetical posed to the VE). As already discussed, substantial evidence supports the ALJ's evaluation of Antahn and her boyfriend's testimony, as well as the medical opinion of Dr. Geary. Accordingly, the ALJ did not err in omitting from her hypothetical limitations asserted by these three individuals given that such limitations lack support in the record.

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 27th day of June, 2024.

Douglas L. Rayes
Senior United States District Judge